IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AIMBRIDGE HOSPITALITY, LLC<br>*Plaintiff* | §<br>§<br>§ | |
| -vs- | §<br>§ | |
| HC SAN ANTONIO, LLC,<br>*Defendant* | §<br>§<br>§<br>§<br>§ | SA-23-CV-00717-XR |

## ORDER ON MOTION FOR DEFAULT JUDGMENT

On this date, the Court considered Plaintiff Aimbridge Hospitality, LLC's motion for default judgment against Defendant HC San Antonio, LLC. ECF No. 10. After careful consideration, the motion is **GRANTED.**

### BACKGROUND

Plaintiff Aimbridge Hospitality, LLC ("Aimbridge"), filed a complaint against Defendant HC San Antonio, LLC ("HCSA") alleging breach of contract. *See* ECF No. 1. Aimbridge alleges that all events originate from HCSA's failure to satisfy a debt due, and that HCSA owes Aimbridge $558,064.43. *Id.*

Aimbridge provides third-party hotel management services. ECF No. 1 ¶ 5. HCSA owns the Embassy Suites by Hilton San Antonio NW I-10 (the "Embassy Suites" or the "hotel"). *Id.* On February 18, 2020, Aimbridge and HCSA entered into a Management Agreement (hereinafter the "Agreement"), whereby Aimbridge agreed to provide management services for HCSA's hotel in exchange for a management fee and reimbursement of its expenses. *Id.* ¶¶ 6–7. In addition, HCSA agreed to provide Aimbridge sufficient working capital in an operating account to pay all of Embassy Suite's gross operating expenses. *See id.* ¶ 8; ECF No. 1-1 ¶¶ 9.1–9.2. Failure to do so

would constitute default under the terms of the Agreement and cause to terminate the Agreement upon written notice. *See* ECF No. 1-1 ¶ 17.1(a).

Aimbridge alleges that HCSA breached the Agreement by failing to furnish the required management fees, expense reimbursements, and working capital. ECF No. 1 ¶ 9. On October 18, 2022, Aimbridge sent HCSA written notice of its default and demanded that HCSA pay specific amounts owed under the Agreement. *See* ECF No. 1-2. When HCSA failed to satisfy this demand, Aimbridge forwarded HCSA its first termination notice on December 5, 2022. ECF No. 1-3. Thereafter, HCSA inquired regarding an amount Aimbridge would accept to keep the Agreement in place. *Id.* Aimbridge acquiesced to a payment of $500,000 by December 13, 2022, to preserve the Agreement under its original terms. ECF No. 1 ¶ 12. HCSA failed to pay once again, however, prompting Aimbridge to send a final termination notice on December 14, 2022. ECF No. 1 ¶ 13.

In June 2023, Aimbridge filed the instant action, asserting a claim for breach of contract against HCSA in connection with the outstanding invoices and seeking damages in the amount of $558,064.43. *See* ECF No. 1. Abridge served HCSA with process through its registered agent on June 7, 2023. *See* ECF Nos. 3, 4. HCSA was thus required to file its written answer or otherwise respond to the complaint by June 28, 2023. *See id.* HCSA failed to timely file an answer or other responsive pleading, request an extension of time in which to do so, or otherwise appear in this action. On Aimbridge's motion, the Clerk entered default as to HCSA. ECF Nos. 8, 9.

The Court now considers Aimbridge's motion for default judgment against HCSA. ECF No. 10. HCSA has not responded to the motion, and the time in which to do so has expired.

# DISCUSSION

## I.     Legal Standard

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012). The Court examines each in turn.

## II.    Analysis

### A.    Jurisdiction

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

#### 1.  *Subject Matter Jurisdiction*

Under 28 U.S.C § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." For diversity jurisdiction to be proper, the "court must be certain that all plaintiffs have a different citizenship from all defendants." *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1258 (5th Cir. 1988). The party asserting federal jurisdiction must "distinctly and affirmatively allege" the citizenship of the parties. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

A corporation is a citizen of its state(s) of incorporation and of the state in which its principal place of business is located, as determined by the "nerve center" test. 28 U.S.C. § 1332(c)(1); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). The citizenship of an LLC depends on the citizenship of all its members. *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). "A party seeking to establish diversity jurisdiction must specifically allege the citizenship of every member of every LLC or partnership involved in a litigation." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017). If the members or partners are themselves partnerships, LLCs, or corporations, their citizenship must be alleged in accordance with the rules of that entity, and the citizenship must be traced through however many layers of members or partners there may be. *Muslow Land & Timber, Inc v. Chesapeake Exploration Ltd. P'ship*, No. 09-cv-0211, 2009 WL 367729 (W.D. La. Feb. 11, 2009).

Because the amount in controversy requirement is clearly met, the Court turns to Aimbirdge's citizenship allegations. To begin, Aimbridge is a limited liability company organized and existing under the laws of the state of Delaware. ECF No. 1 ¶ 1. Aimbridge is wholly owned by Ambridge Hospitality Holdings, LLC, a Delaware limited liability company. *Id*. Ambridge Hospitality Holdings, LLC is wholly owned by Aimbridge Parent, Inc., a Delaware corporation with its principal place of business in Texas. *Id*. Aimbridge is therefore a citizen of both Delaware and Texas.

Ambridge has plead HCSA's citizenship "on information and belief." ECF No. 1 ¶ 2. HCSA is a limited liability company organized and existing under the laws of the state of Indiana. *Id.* ¶ 1. Aimbridge asserts that HCSA's Franchise Tax Public Information Report lists HC Holdco,

LLC ("Holdco") as its only member, holding a 100% ownership interest in HCSA. *Id.* ¶ 2. However, the Indiana Secretary of State Business Entity Reports filed by Holdco contain no information as to Holdco's ownership. ECF No. 1 at n.1. Aimbridge has purportedly conferred with the Indiana Secretary of State and confirmed that no additional information is available beyond what is self-reported on the business entity reports available electronically from the Indiana Secretary of State's website. *Id.* Nor has HCSA responded to any of Aimbridge's requests for additional information. *Id.* Accordingly, Aimbridge asserts that, upon information and belief, the members of Holdco are all members of Indiana, and that by extension HCSA is a citizen of Indiana, and not of Texas. *Id.*

This Court has held that jurisdictional allegations pled on information and belief can support a default judgment where (1) the citizenship of each member of the defendant LLC is a fact within that defendant's control and (2) the plaintiff made a good-faith attempt to learn these facts pled on information and belief. *Bsg Clearing Solutions N. Am., LLC v. Durham Tech., LLC*, No. 17-CV-1097, 2018 WL 6219812, at *3 (W.D. Tex. Nov. 20, 2018). Indeed, courts are clear that "*conclusory* allegations based on information and belief" are insufficient to support a default judgment. *J & J Sports Prods. Inc. v. Daley*, 2007 WL 7135707, at *3–4 (E.D.N.Y. Feb. 15, 2007) (emphasis added).

Here, Aimbridge has clearly made a good faith effort to ascertain the citizenship of Holdco, and, by extension, the citizenship of HCSA. Not only did Aimbridge thoroughly search for publicly available information online, but Aimbridge also conferred with the Indiana Secretary of State and confirmed that no additional information concerning Holdco's principals is available beyond the self-reported information on the Secretary of State's website. ECF No. 1 at 2 n.1. Neither Aimbridge's counsel nor third-party record retrieval companies have been able to locate any

additional information. *Id*. Efforts of this sort reflect a good faith attempt to ascertain HCSA's citizenship. *Bsg Clearing Solutions*, 2018 WL 6219812, at *10–11 (holding that a plaintiff's attempt to determine the citizenship of defendant LLCs using "internet search engines, news publications, public-electronic databases, [and] publicly-available electronic court filings" demonstrates a good faith effort sufficient to plead jurisdictional facts on information and belief). Thus, Aimbridge's allegations are not merely conclusory and adequately support the inference that both Holdco and HCSA are citizens of Indiana.

Treating the well-pleaded jurisdictional facts alleged in the complaint as true, the Court concludes that Aimbridge has provided a sufficient basis for subject matter jurisdiction.

### 2. *Personal Jurisdiction*

This Court also has personal jurisdiction over HCSA, even though it is not domiciled in Texas. Courts can exercise personal jurisdiction over out-of-state defendants if permitted by the state's long-arm statute and there is not a conflict with federal due process. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).[1] Due process requires that the defendant have "minimum contacts" with the forum state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that

---

[1] Texas's long-arm statute specifically provides that, in addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

    (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
    (2) commits a tort in whole or in part in this state; or
    (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE § 17.042.

6

exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Id.*

"Minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, the Court is satisfied that HCSA's direct and purposeful contacts with the state of Texas give rise to specific jurisdiction in this forum. HCSA purposely availed itself of the benefits and protections of the state of Texas by soliciting Aimbridge's management services in Texas. *See* ECF No. 1 ¶ 6. Moreover, the contract giving rise to this action was performed in Texas— Aimbridge performed its management services under the Agreement at HCSA's hotel in San Antonio, Texas. *Id.* ¶¶ 6, 14. Given this history of contacts, HCSA should have reasonably

anticipated being haled into court in the state of Texas based on its breach of the Agreement. *See Ruston Gas Turbines*, 9 F.3d at 419.

The Court further concludes that exercising jurisdiction over HCSA would not offend traditional notions of fair play or equal justice. In making this determination, courts consider a number of factors related to fairness: "(1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)).

Considering these factors alongside HCSA's history of contacts with the state of Texas, there is no reason to believe that the Court's exercise of jurisdiction over HCSA would be unfair.[2] *Coach, Inc. v. Pro Nail & Beauty Supply*, No. 5:16-CV-327-DAE, 2016 WL 9450446, at *4 (W.D. Tex. Dec. 27, 2016) ("Any inconvenience in litigating in a foreign state is not extraordinary in the federal courts, and [the defendant] has offered no facts which distinguish this case from the norm."). Moreover, the state of Texas has an interest in ensuring that contracts made within the state are upheld. *See XPEL Techs. Corp. v. Maryland Performance Works Ltd.*, No. SA-05-CA-0593, 2006 WL 1851703, at *8 (W.D. Tex. May 19, 2006) ("Texas has an interest in enforcing contracts that are to be interpreted under Texas law."); *see also MDI, Inc. v. JenTek Integrated Sys., Inc., No.* SA-07-CV-289-WRF, 2007 WL 1512022, at *4 (W.D. Tex. May 21, 2007) ("The

---

[2] Because Aimbridge has made a prima facie showing of minimum contacts, HCSA bears the burden "to show that the Court's exercise of jurisdiction would not comport with notions of fair play and substantial justice." *Metis Int'l, L.L.C. v. Ace INA Holdings, Inc.*, No. CIV.A.SA04CA-1033-XR, 2005 WL 1072587, at *4 (W.D. Tex. May 6, 2005) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Given HCSA's default in this case, it has clearly failed to offer any evidence that the Court's exercise of jurisdiction would be unreasonable or burdensome.

8

forum state of Texas, however, has a great interest in having the case within its bounds as it no doubt would like to protect the business of the corporations doing business in Texas."); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 188 F. Supp. 2d 115, 122 (D. Mass. 2002) ("Each state has a strong interest in enforcing contracts[.]"). Thus, the Court concludes that it has personal jurisdiction over HCSA.

Finally, the Court finds that Aimbridge has properly effected service of process on HCSA in accordance with Texas law by serving HCSA through its registered agent. "[S]ervice of process . . . initiates a defendant's obligations in a civil suit[.]" *Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*, 602 F. App'x 595, 598 (5th Cir. 2015) (per curiam). Absent proper service of process, a court lacks personal jurisdiction over a defendant, and any default judgment against the defendant would be void. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Pursuant to the Federal Rules of Civil Procedure, the plaintiff bears the burden of ensuring that the defendant is properly served with a copy of the summons and the complaint within ninety days of filing the complaint. *See* FED. R. CIV. P. 4(c)(1), (m).

The Federal Rules also provide for service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Because this Court sits in the Western District of Texas, it looks to Texas authority when evaluating whether a defendant has been adequately served. Under Texas law, a corporate entity may be served with process through the corporation's registered agent, president, or vice president. *See* TEX. BUS. ORGS. CODE §§ 5.201, 5.255(1); *Henderson v. Republic of Texas*, 672 F. App'x 383, 385 (5th Cir. 2016).

The affidavit of service indicates that HCSA was served through its registered agent on June 7, 2023, just over one month after the complaint was filed. *See* ECF No. 4 at 2; FED. R. CIV.

9

P. 4(h)(1)(B). Accordingly, the Court concludes that HCSA was timely and properly served with process under Rule 4.

### B. Liability

Next, the Court considers whether the well-pleaded allegations in Aimbridge's complaint establish liability if deemed admitted. When a defendant fails to respond, his default is considered an admission of the plaintiff's well-pleaded allegations of fact related to liability. *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). While such allegations are presumed to be true, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206. In other words, the Court must determine whether the well-pleaded facts state a claim upon which relief may be granted. In sum, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action[,] and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x. 860, 863 (11th Cir. 2007).

Here, Aimbridge lodges a sole cause of action against HCSA for breach of contract. The Court finds Aimbridge has adequately alleged a claim for breach of contract against HCSA.

Under Texas law, a claim for breach of contract requires that the following elements are satisfied: "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *McLaughlin, Inc. v. Northstar Drilling Techs., Inc.*, 138 S.W.3d 24, 27 (Tex. App.—San Antonio 2004, no pet.).

In its complaint, Aimbridge pleads facts sufficient to state a claim for breach of contract under Texas law. First, Aimbridge pleads the existence of a valid contract in which Aimbridge would provide HCSA with its hotel management services in exchange for a management fee calculated pursuant to ¶ 11.1 of the Agreement, in addition to reimbursable expenses. ECF No. 1 ¶ 7. Second, Aimbridge further pleads that it met its obligations under the Agreement. *See see also id.* ¶ 14. Third, Aimbridge also alleges that HCSA breached the contract by failing to make payments for the services provided. ECF No. 1 ¶¶ 14, 17; *id.* ¶ 18 ("Aimbridge contends that HCSA is currently in default under the Agreement in the amount of $558,064.43 . . . because HCSA has consistently failed to tender amounts owning under the Agreement for the operation and management of Embassy Suites from July 2022 until December 2022."); *see also id.* ¶ 19. Fourth, Aimbridge alleges that it suffered damages as a result of HCSA's failure to pay for the services provided. *Id.* ¶ 20. These allegations, taken as true, make out a claim for breach of contract against HCSA.

### C.     Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages awarded in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Usually, non-liquidated damages are proven at a hearing. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). However, where a mathematical calculation of unliquidated damages is possible with reference to adequately detailed affidavits, a hearing is not necessary. *Id.* The discretionary nature of whether to conduct a hearing is supported by the express language in the Federal Rules themselves. *See*

FED. R. CIV. P. 55(b)(2) (emphasis added) ("The court may conduct hearings . . . when, to enter or effectuate a judgment, it needs to: . . . (B) determine the amount of damages[.]").

Here, Aimbridge seeks a sum certain and thus the damages can be determined without a hearing. In addition, Aimbridge seeks the same amount and kinds of damages sought in the complaint. Aimbridge seeks $558,064.43, which is the sum of the alleged unpaid invoices. The Court finds this amount proper and further awards pre- and post-judgment interest.

### 1. *Prejudgment Interest*

Aimbridge seeks prejudgment interest at the maximum rate permitted by law. ECF No. 10 at 5. When, as here, the parties' contract does not specify a prejudgment interest rate, the Court must look to the availability of prejudgment interest under Texas law in diversity cases. *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010) ("State law governs the award of prejudgment interest in diversity cases.").

"In Texas, prevailing parties receive prejudgment interest as a matter of course." *Avitia v. Rodriguez*, No. MO:20-CV-69-DC, 2022 WL 4004796, at *8 (W.D. Tex. July 8, 2022) (citing *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1329–30 (5th Cir. 1994)). Under Texas law, "[t]here are two legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). Because breach-of-contract claims do not fall within Texas enabling statutes, the "prejudgment interest award is governed by Texas common law." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499–500 (5th Cir. 2002) (citing *Kenneco*, 962 S.W.2d at 530; *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 768 (Tex. App.—Corpus Christi-Edinburg 2001, no pet.)). Under Texas common law, "prejudgment interest accrues at the rate for

postjudgment interest [under the Texas Finance Code] and [is] computed as simple interest." *Kenneco*, 962 S.W.2d at 532.

Pursuant to Section 304.003 of the Texas Finance Code, which governs post-judgment interest rates, the applicable interest rate is the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation, unless that rate is less than five percent or more than fifteen percent. TEX. FIN. CODE § 304.003(c). As of November 7, 2023, the prime rate as published by the Board of Governors of the Federal Reserve System is 8.50%.

Next, the Court must determine the date on which Aimbridge began accruing prejudgment interest. Under Texas law, prejudgment interest begins to accrue on the earlier of 180 days after the date on which a defendant receives written notice of a claim or the date the suit is filed. *Kenneco*, 962 S.W.2d at 531; TEX. FIN. CODE § 304.104. A claim is a demand for compensation or an assertion of a right to be paid. *Paez v. Wal-Mart Stores Tex., LLC*, No. 20-CV-321, 2022 WL 2873462, at *1 (W.D. Tex. July 21, 2022) (quoting *Fleming & Assocs., LLC v. Barton*, 425 S.W.3d 560, 577 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Aimbridge sent its final termination notice to HCSA on December 14, 2022, citing HCSA's failure to fund the operating account as the ground for severing the Agreement. ECF No. 1-3. While that letter placed HCSA on notice of the claim, Aimbridge filed suit within 180 days of the final termination notice.[3] Accordingly, the Court calculates prejudgment interest (computed as simple interest) from June 2, 2023—the date the case was filed—to the day preceding the date of judgment. *See* TEX. FIN. CODE § 304.104.

---

[3] June 12, 2023 is 180 days from December 14, 2022.

### 2. Post-Judgment Interest

The federal post-judgment interest rate is governed by 28 U.S.C. § 1961(a), which sets the rate at the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of judgment. *See Meaux Surface Prot.*, *Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). For the week ending on November 3, 2023, the federal post-judgment interest rate is 5.38%. Therefore, the Court awards post-judgment interest on all amounts awarded to Aimbridge at a rate of 5.38% from the date of the entry of the Final Judgment.

### 3. Attorney's Fees

Aimbridge requests an award of reasonable attorney's fees in its Complaint. The Court will consider the issue of attorney's fees after judgment pursuant to Rule 54(d)(2). *See BSG Clearing Sols. N. Am., LLC v. Durham Tech., LLC*, No. SA-17-CV-1097-XR, 2018 WL 6219812, at *8 (W.D. Tex. Nov. 20, 2018) (granting default judgment but postponing consideration of attorney's fees under after judgment because "[n]o documentation supporting a request for a specific amount of attorney's fees [was] before the Court and the amount of attorney's fees being sought [was] unclear.").

### 4. Costs

Likewise, Aimbridge requests an award of costs in its complaint, ECF No. 1 at 7, but not its motion for default judgment. *See* ECF No. 10. A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. *See* FED. R. CIV. P. 54(d)(1). Thus, the Court will award Aimbridge its costs of court.

## CONCLUSION

Accordingly, Aimbridge's motion for default judgment (ECF No. 10) is **GRANTED**. Aimbridge is awarded $558,064.43 in damages, $20,533.71 in pre-judgment interest, and post-

judgment interest. A separate judgment in favor of Aimbridge shall issue in accordance with Rule 58.

Aimbridge is awarded costs and may file a bill of costs in the form required by the Clerk of Court, with supporting documentation, within fourteen (14) days of the entry of judgment. *See* Local Rule 54.

Aimbridge may also submit a motion for attorney's fees and any supporting evidence within fourteen (14) of the entry of judgment pursuant to Local Rule 54, or seek an extension of time in which to do so.

It is so **ORDERED**.

**SIGNED** this 7th day of November, 2023.

                                                XAVIER RODRIGUEZ
                                                UNITED STATES DISTRICT JUDGE